## Russo v. Fisher, etc.

*W. Gable*, for plaintiff.
*Paul D. Zentmyer*, for defendant.

WINNET, J., May 2, 1941.—Plaintiff, A. A. Russo, brings this action under the Federal Fair Labor Standards Act of June 25, 1938, 52 Stat. at L. 1060, c. 676, 29 U. S. C. §§201-219, against defendant, Arthur J. Fisher, trading as Fisher Case Company. Jurisdiction of the court is conferred in section 16(*b*):

"Any employer who violates the provisions of section 6 or section 7 of this Act shall be liable to the employee

or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

The allegation in the statement of claim is that defendant is engaged in the manufacturing business, the products of which are sold in interstate commerce; that, contrary to the provisions of the act of Congress, plaintiff did not receive the minimum wage therein provided, and was required to work in excess of the maximum weekly hours, and he, therefore, claims unpaid minimum wages, liquidated damages, and attorney's fee, totaling $720.90.

The suit is in trespass and defendant did not file an affidavit of defense.

At the trial plaintiff testified that he started to work for defendant in September of 1934. Both plaintiff and defendant described the nature of the business involved. I accept defendant's description and find that he operated a stationery and variety store at 21 South Seventh Street, Philadelphia. In it he sold at retail and over the counter signs, scratch pads, pins, pens, stencils, rubber stamps, daters, pads, and a miscellaneous line of stationery supplies. In addition thereto, he sold postal supplies, such as rubber stamps used by postal employes, practice cases used by persons who intend to take civil service examinations, die stamps, straps, aprons and miscellaneous other supplies used particularly by such employes. The practice cases were built in defendant's store; the rubber stamps were assembled in the store, but the dies, that portion of the stamp which prints the customer's name or whatever is specified, is ordered by defendant and is attached in

his store. Defendant printed and distributed widely a catalogue advertising particularly the postal supplies.

During the period commencing October 24, 1938, up to November 13, 1939, the period of the alleged violation of the Fair Labor Standards Act, defendant's total sales numbered 8,917, for the total amount of $8,218.80. Of this amount 7,652 items, for a total sum of $6,855.78, were sold in the State, mostly over the counter. The balance, numbering 1,257 items for the sum of $1,362.02, was sold outside of the State. The total number of practice cases manufactured was 60 and was sold for $93.60, of which 10 amounting to $27.85 were sold outside of Pennsylvania. The total number of stamps assembled outside of the State was 287 for the total sum of $480.74.

Both plaintiff and defendant are in general agreement as to plaintiff's duties. He was a messenger boy, made sales, mounted the rubber stamps, made deliveries and took part generally in all the work in connection with defendant's store. Plaintiff emphasized his part in sending out the catalogues to postal employes, and in the manufacture of practice cases.

There is no doubt as to the amount of wages plaintiff was paid. He received $8 per week at first, and then $10. There is no serious dispute as to the hours of employment, which plaintiff calculates as 51 hours per week. In addition plaintiff admitted that he received certain commissions for repairing number machines and for sales to new customers. Plaintiff admitted that for three weeks before he ceased working for defendant he solicited business on his own account. According to defendant those commissions amounted to $2 to $3 per week. There was no definite evidence given either by plaintiff or defendant as to the amount of the commissions.

We will assume that plaintiff did not receive the minimum required under the act of Congress and that his hours of employment exceeded the maximum pro-

vided in the act. The question that is involved is whether defendant's business was subject to the Fair Labor Standards Act.

The statement of claim definitely charges that defendant is engaged in the manufacturing business, the products of which are sold in interstate commerce. If this is so he clearly would come under the act, which provides:

"Sec. 6.(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce . . ." certain minimum wages and maximum hours.

The purpose of the act as stated in section 2, 29 U. S. C. §202, in the declaration of policy, was to obviate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." The purpose is broad enough to cover all employes. Obviously, however, Congress could not regulate an intrastate business: A. L. A. Schechter Poultry Corp. et al. v. United States, 295 U. S. 495. If the employer is engaged in commerce or the production of goods for commerce, the beneficent purpose of the act should be carried out by construing broadly its provisions and applying it to the employes of the employer who are so engaged. The particular duties of the employe are of secondary importance.

I conclude, however, on two grounds that this act does not apply to defendant in this case. First, he is not engaged in commerce or in the production of goods for commerce, and second, plaintiff falls clearly within the exemption provided in section 13 (a) 2 which exempts "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce."

Whether a particular employer is engaged in commerce or in the production of goods in commerce is not controlled by the volume of business. In National

Labor Relations Board v. Fainblatt et al., 306 U. S. 601, 606, Mr. Justice Stone said: "The power of Congress to regulate interstate commerce is plenary and extends to all such commerce be it great or small." The very nature of the business must be considered. And what is it that defendant is engaged in? He has a little retail stationery store in which he dispenses and sells literally hundreds of small items, a certain portion of which he sells through the mail. It is true that he assembles rubber stamps. It is also true that he manufactures practice cases. The volume of such production is helpful in determining the nature of the business conducted. Considering the variety of articles sold, the volume and value of articles that he manufactures, I conclude that defendant is not a manufacturer but is a retailer and conducts in every sense of the word a retail establishment.

As a retailer I find that defendant falls clearly within section 13 (a) 2 of the act which exempts any employe engaged in a retail establishment the greater part of whose selling is in intrastate commerce. In considering whether an employer is entitled to this exemption the volume of business done by him and the employe in question in interstate commerce is important. By the very wording of the act, Congress has indicated that the percentage of business is the determining factor. Admitting that the courts must apply broadly and liberally the coverage of the act, to effectuate the intent which Congress purposed, to obviate labor conditions detrimental to maintenance of minimum standards of living necessary for health and the general well-being of workers, nevertheless, it is the duty of the courts in accomplishing that purpose not to undermine the exemptions which the act itself specifies.

Applying this principle to the facts of this case, we find that defendant, a retailer, a storekeeper, sells over the counter 60 percent of his products, and sells in the State 83 percent of his goods, and only 17 percent in

interstate commerce. Plaintiff as an employe took part in every phase of defendant's business. He was an all-around boy, selling, delivering, soliciting, cleaning the store, assembling rubber stamps and working on the practice cases. If we credit him with doing his fair share of every activity, we still must conclude that the greater part of his time in this retail establishment was in selling or servicing in intrastate commerce, and he is exempt under the act.

The ruling here is clearly indicated in interpretive bulletin no. 6 issued by the United States Department of Labor with reference to section 13(a)2. Paragraph 6 provides: "A retail establishment sells merchandise to the ultimate consumer for direct consumption and not for purpose of resale in any form." Paragraph 7 provides: "A retail establishment generally sells its merchandise in small quantities." Defendant falls clearly within those two paragraphs. Paragraph 24 provides: "In determining whether the greater part of the selling or servicing of a given enterprise is in intrastate commerce (i. e., more than 50 percent of the servicing or selling), two factors should be chiefly considered: (1) the number of sales made within the state in which the establishment is located as compared with the total number of sales of the establishment; (2) the gross income derived from sales made or services performed within the state as compared with the total gross income of the establishment."

Of the total number of sales of defendant 85 percent is made intrastate; of the gross income 83 percent is within the State. The Department of Labor's interpretation, which should be persuasive, would thus also exempt plaintiff from the benefits of the act.

Wood v. Central Sand & Gravel Co. et al., 33 Fed. Supp. 40, is clearly distinguishable from the facts of this case. The court there considered not only the activity of the company employing plaintiff but the entire business operation of the parent company, the Fischer

Lime & Cement Company, and concluded that the business was substantially a wholesale business and not entitled to the exemption provided in the act.

The finding here is that defendant conducts a retail establishment and plaintiff is exempt from the act. I, therefore, find for defendant.